UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Trustees of the Minnesota Ceramic Tile and
Allied Trades Retirement Fund; Trustees of
the Minnesota Ceramic Tile and Allied
Trades Promotion Fund; Trustees of the
Minnesota and North Dakota Bricklayers
and Allied Craftworkers Health Fund;
Trustees of the Minnesota and North
Dakota Bricklayers and Allied Craftworkers
Vacation Fund; and Trustees of the
Minnesota and North Dakota Bricklayers
and Allied Craftworkers Apprenticeship
Fund,

      Plaintiffs,

v.                                                                                                     Civ. No. 06-2965 (JNE/SRN)
                                                                                                   ORDER

Legacy Tile and Marble, Inc.,

      Defendant.

_____

Stephen C. Kelly, Esq., Rosene, Haugrud & Staub, Chartered, appeared for Plaintiffs Trustees of the Minnesota Ceramic Tile and Allied Trades Retirement Fund; Trustees of the Minnesota Ceramic Tile and Allied Trades Promotion Fund; Trustees of the Minnesota and North Dakota Bricklayers and Allied Craftworkers Health Fund; Trustees of the Minnesota and North Dakota Bricklayers and Allied Craftworkers Vacation Fund; and Trustees of the Minnesota and North Dakota Bricklayers and Allied Craftworkers Apprenticeship Fund.

John C. Hauge, Esq., and Michael Wilhelm, Esq., Briggs & Morgan, P.A., appeared for Defendant Legacy Tile and Marble, Inc.

_____

        Plaintiffs are trustees of multiemployer fringe benefit plans that were established to provide retirement benefits, health benefits, and other benefits under various written agreements to employees doing work in the construction trades. *See* 29 U.S.C.A. § 1002(37) (West 1999 & West Supp. 2007). Plaintiffs bring this action against Defendant Legacy Tile and Marble, Inc., alleging that Defendant breached its collective bargaining agreements (CBAs) with Bricklayers

1

& Allied Craftworkers Local No. 1 of Minnesota (Tile Layers and Finishers, Chapter 18) (union) and violated the Employee Retirement Income Security Act (ERISA) by failing to submit required fringe benefit contribution reports and contributions to Plaintiffs. *See* 29 U.S.C. § 1145 (2000). The parties filed cross-motions for summary judgment. For the reasons stated below, the Court concludes that contributions for hours worked by owners and supervisors may potentially be recovered under the CBAs' provisions reserving certain work to union-member employees but that genuine issues of material fact remain as to whether such recovery is precluded by Plaintiffs' failure to resort to the CBAs' grievance and arbitration procedures. In addition, the Court grants Plaintiffs' motion for summary judgment as to missing fringe benefit contribution reports and as to Defendant's affirmative defenses, excepting Defendant's defense related to the CBAs' grievance and arbitration provisions. As the Court indicated at the motion hearing, genuine issues of material fact preclude entry of summary judgment in all other regards.

## I.  BACKGROUND

Defendant, a Minnesota corporation, is owned by Ronald and Veronica Read and is in the business of installing floor coverings. Defendant entered into CBAs with the union on August 24, 2001, and again on August 25, 2004. Together, these CBAs cover the time period relevant to this case, with the second CBA effective through April 30, 2007.

The CBAs governed work related to installation of tile and preparation for installation of tile nearly anywhere indoors or outdoors. The parties refer to this work as "covered work," meaning it is work within the jurisdiction of the CBAs. The CBAs required that all covered work be done by union-affiliated workers,[1] stating that

---

[1]  The CBAs also contain provisions for use of subcontractors. Those provisions are not at issue in this case.

2

> [a]ll work as defined in this Agreement shall be performed by Journeyman Tile Layers, Apprentices and Finishers. All employees shall, as a condition of employment be required to become Union members after the seventh day following the beginning of their employment, or the effective date of this Agreement, whichever is later.

Under the terms of the CBAs, Defendant was required to make certain payments to and file certain reports with Plaintiffs. Specifically, both CBAs state that "[t]he Employer agrees to contribute every month, not later than the 20th day of the following month . . . such sums for [the various fringe benefit funds] as they may be established, an amount for each hour worked by all Employees covered by this Agreement." In addition, both CBAs required "[r]eporting forms . . . standardized with other basic trades," and the fringe benefit plans' trust agreements, which were incorporated as part of the CBAs, elaborated on Defendant's reporting obligations.[2]

The CBAs contain arbitration clauses stating that "[d]isputes as to the interpretation of or adherence to the terms of this Agreement are grievances and shall be subject to the grievance and arbitration provisions herein, provided submission is made within ten (10) days following occurrence of or knowledge of the incident giving rise to the grievance." The CBAs prescribe procedures for initiating and executing the grievance and arbitration process and provide that "[t]he result of the Arbitration shall be final and binding." Both CBAs state that "failure, refusal or neglect of an Employer to report and to pay sums due the Trust Funds or otherwise to comply with the terms and provisions of [the section dealing with fringe benefits] shall not be subject to arbitration."

After an audit of Defendant's records, Plaintiffs filed the present action on July 10, 2006, alleging that Defendant breached the CBAs and violated 29 U.S.C. § 1145 by failing to file

---

[2]     The fringe benefit plans' trust agreements are similar but not identical. The parties do not distinguish between the plans based on differences in the trust agreements.

required reports and make required fringe benefit fund payments. Plaintiffs seek recovery of the delinquent payments; additional money damages, including attorney fees and liquidated damages provided for in the CBAs; and an injunction requiring, among other things, that Legacy submit fringe benefit contributions and the corresponding reports as they become due. Both Plaintiffs and Defendant moved for summary judgment.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Plaintiffs' motion for summary judgment*

Regarding delinquent fringe benefit fund contributions, Plaintiffs argue that Defendant's records are insufficient to properly calculate the amounts Defendant was obligated to pay to the funds, and Plaintiffs argue that they are therefore entitled to benefit from an inference that all unexplained work should be counted in determining Defendant's obligations to pay. *See Mich.*

*Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696 (6th Cir. 1994).  At the motion hearing, the Court denied summary judgment because genuine issues of material fact remained.  *See* Fed. R. Civ. P. 56(c).

Regarding delinquent fringe benefit contribution reports, Plaintiffs have established that Defendant stopped submitting reports after November 2006.  *See id*.  Accordingly, Plaintiffs are entitled to an order requiring Defendant to submit any missing reports that are required by the CBAs and the trust agreements they incorporate.

Plaintiffs also seek summary judgment on Defendant's affirmative defenses.  As discussed below, Defendant maintains that Plaintiffs were required to seek remedies for certain alleged violations through the CBAs' grievance and arbitration provisions, but Defendant did not otherwise contest this aspect of Plaintiffs' motion.

Finally, Plaintiffs seek an injunction requiring Defendant to comply with a fringe benefit payroll audit for the time period January 1, 2007, through April 30, 2007.  While the trust agreements appear to obligate Defendant to comply with payroll audits, Plaintiffs fail to identify evidence demonstrating that Plaintiffs requested an audit for that time period and that Defendant refused to cooperate.  The record appears to contain only a conclusory statement in an affidavit by Plaintiff's counsel that such an injunction should be issued.  On this record, an injunction ordering an audit is not warranted.

*Contributions for non-covered work and for work performed outside of the CBAs' jurisdictions*

Defendant asserts that it has demonstrated that the contribution amounts sought by Plaintiffs include sums Defendant is not required to pay, specifically contributions for types of work not covered by the CBAs and for work done outside of the geographical jurisdiction

covered by the CBAs. At the motion hearing, the Court denied summary judgment because genuine issues of material fact remained. *See id*.

*Contributions due after the Complaint was filed*

Defendant argues that Plaintiffs may not seek recovery of damages related to contributions that became delinquent after the Complaint was filed. Specifically, Defendant contends that case law interpreting ERISA precludes such recovery. 29 U.S.C.A. § 1132(g)(2) (West 2006) establishes the relief available in an action to recover delinquent fringe benefit fund contributions:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

*Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476 (8th Cir. 1988), held that a plaintiff's ability to recover liquidated damages on unpaid contributions is limited by the fact that "unpaid contributions" signifies "contributions unpaid at the time suit was filed." *Id*. at 478. If unpaid contributions are exclusively those contributions that were delinquent at the time of filing, then Plaintiffs may not obtain recovery related to contributions that became delinquent after filing in the present lawsuit. *See id*. at 479 (indicating that remedies under section 1132(g)(2) are exclusive remedies). However, *Gittleman* dealt only with "contributions which were delinquent for some time but which were paid up before suit was filed," not contributions

6

that become delinquent after filing. *Id.* at 478; *see also id.* at 479 (stating opinion's holding reaches only the issue of recovery of liquidated damages). The Court concludes that *Gittleman*'s narrow definition of unpaid contributions applies only when a party seeks recovery related to formerly delinquent contributions that were paid prior to filing; that definition does not apply in the present case to bar relief, including liquidated damages, related to contributions that became delinquent after the Complaint was filed.

Defendant further argues that the Federal Rules of Civil Procedure require Plaintiffs to amend or supplement their pleadings if they wish to seek damages related to such contributions. A party that wishes to add a claim related to "any transaction, occurrence, or event that happened after the date [the complaint was filed]" must seek the court's permission to file a supplemental pleading. Fed. R. Civ. P. 15(d); *cf.* Fed. R. Civ. P. 15(a) (providing that, once a responsive pleading has been filed, a party may amend its complaint "only with the opposing party's written consent or the court's leave"). Plaintiffs have not sought to file a supplemental pleading to add claims for payments that became delinquent after this lawsuit began. Alternatively, assuming Plaintiffs' Complaint currently requests relief for anticipated future delinquencies,[3] such a claim arguably fails to meet the pleading requirements of Fed. R. Civ. P. 8(a)(2) or to constitute a case or controversy under Article III, Section 2 of the United States Constitution. *See Trustees of the St. Paul Elec. Constr. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1068 (D. Minn. 2007).

Notwithstanding Defendant's arguments, the Court concludes that Plaintiffs need not amend or supplement their pleadings in order to seek damages, including liquidated damages,

---

[3]  It is conceivable, though perhaps not likely, that the Complaint's statement that "Defendant continues to fail to submit . . . fringe benefit contribution payments" was intended to encompass future delinquencies.

related to contributions coming due post-filing. While Defendant has not waived the protections of the Federal Rules of Civil Procedure, *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Fed. R. Civ. P. 54(c) ("Every [judgment other than default judgments] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Martens Elec.*, 485 F. Supp. 28 at 1069 (indicating that waiver of the protections of the civil rules may permit recovery related to contributions due post-filing), Defendant does not claim that it has not had actual notice of the relief Plaintiffs seek, *cf. Martens Elec.*, 485 F. Supp. 28 at 1069 (citing adequate notice to defaulting defendant as reason to permit recovery related to contributions becoming delinquent only after filing). It would unnecessarily burden litigants and the courts, frustrate deterrence of ERISA violations, and hinder recovery by injured fringe benefit funds to require ERISA plaintiffs to continually file new lawsuits or to continually amend their pleadings as new payments become delinquent. *See Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F. Supp. 1398, 1401-02 (N.D.Cal. 1992). Moreover, courts in this district have, at least in cases involving defaulting defendants, permitted recovery of unpaid fringe benefit fund contributions that came due after suit was filed. *See, e.g.*, *Malcolm v. Larson*, Civ. No. 06-4253, 2007 WL 107740 (D. Minn. Jan. 10, 2007).

*Contributions for hours of covered work performed by owners and supervisors*

Defendant argues that as a matter of law no contributions were required for Ronald Read, as owner and supervisor, and Leonardo Luna, as supervisor.[4] Defendant contends that, under the CBAs, supervisors and owners are not part of the class of individuals for whom contributions to

---

4   Plaintiffs have not argued that Read and Luna are not supervisors or that Read is not an owner. Defendant does not claim that Read and Luna did not perform covered work.

the fringe benefit funds are required, *i.e.*, "Employees covered by th[e CBAs]."[5] To demonstrate that owners are not employees covered by the CBAs, Defendant points to language in several trust agreements, the terms of which are incorporated by the CBAs, stating that "[t]he term 'Employee' shall not include any owner-operator." In support of its argument that supervisors do not qualify as employees covered by the CBAs, Defendant urges the Court to look to the National Labor Relations Act (NLRA), the legislation that grants "employees" the right to bargain collectively. *See* 29 U.S.C. § 157 (2000). The NLRA provides that "[t]he term 'employee' . . . shall not include . . . any individual employed as a supervisor." *Id*. § 152(3) (2000). Defendant also points to the Minnesota State Basic Building Trades Fringe Benefit Funds audit guidelines, which indicate that hours worked by "[o]ffice and management personnel and other non-participating, non-bargaining unit employees shall be excluded from . . . consideration" in determining the sums owed to fringe benefit funds.

When an employer agrees to make contributions to fringe benefit funds pursuant to a collective bargaining agreement, the terms of that collective bargaining agreement define the employer's obligation to make those payments. *See* 29 U.S.C. § 1145. Therefore, the Court must look to the parties' CBAs to determine the extent of Defendant's duty to pay. *See Ill. Conference of Teamsters & Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 458 (7th Cir. 1994).

The Court concludes that the phrase "Employees covered by this Agreement" does not include non-union owners or supervisors. If, as Plaintiffs contend, fringe benefit fund contributions were required whenever covered work was performed, the CBAs need not have

---

[5] Several trust agreements indicate that an individual not subject to the CBAs may participate in the fringe benefit programs if he or she executes an additional "Participation Agreement." There is no evidence either Read or Luna executed such an agreement.

included a reference to the identity of the individuals performing the work in the course of establishing Defendant's duty to pay fringe benefit contributions. *Cf. Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Savings Plan Trust Funds v. Karr Bros., Inc.*, 755 F.2d 1285, 1287-88 (7th Cir. 1985) (noting district court's conclusion that employer did not breach portions of a collective bargaining agreement governing fringe benefit funds contributions by failing to make contributions for independent contractors employed in violation of an unrelated collective bargaining agreement provision because independent contractors did not qualify as employees).

However, the Court also concludes that other sections of the CBAs reserved covered work for union-member employees and that Defendant breached the CBAs to the extent it permitted non-union owners and supervisors to perform covered work. Contributions for hours of covered work performed by non-union owners and supervisors—contributions that would have been required had the work been performed by union-member employees as required by the CBAs—may be recovered as a consequence of breach of the portion of the CBAs reserving covered work to union-member employees. *Cf. id.* (noting district court's conclusion that employer was liable for lost fringe benefit funds contributions attributable to employer's breach of the portion of the collective bargaining agreement forbidding use of independent contractors, notwithstanding lack of an obligation of the employer to otherwise pay contributions for hours worked by independent contractors).[6]

---

[6] Though Plaintiffs have not framed their claims regarding contributions for Read's and Luna's hours in these precise terms, the Court is satisfied that this claim has been adequately raised and argued. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) ("The essential function of notice pleading is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." (quotation omitted)). That Defendant asserts Plaintiffs should have objected to execution of

Defendant further argues that, to the extent that Plaintiffs complain that covered work was performed by individuals not authorized to do covered work under the CBAs, the proper remedy is resort to the CBAs' grievance and arbitration provisions. While the CBAs state that arbitration is final and binding, they do not discuss the consequences of failure to submit an arbitration-eligible matter to arbitration. Therefore, the CBAs are ambiguous as to whether the grievance and arbitration clauses constitute an exclusive and mandatory remedy. On this record, the parties' intentions regarding the effect of the ambiguous arbitration provisions constitute an unresolved issue of fact, rendering summary judgment inappropriate. *See* Fed. R. Civ. P. 56; *Severson v. Fleck*, 251 F.2d 920, 924 (8th Cir. 1958) ("We hold here that the intent of the parties in executing this ambiguous contract was a genuine issue of material fact and could not properly be determined on appellee's motion for summary judgment.").

---

covered work by Read and Luna through the CBAs' grievance and arbitration procedures rather than through the present lawsuit is evidence that Defendant had adequate notice of this claim.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 21] is DENIED.

2. Plaintiffs' Motion for Summary Judgment [Docket No. 23] is GRANTED IN PART and DENIED IN PART. The motion is granted as to delinquent fringe benefit contribution reports and as to Defendant's affirmative defenses, excepting Defendant's defense related to the CBAs' grievance and arbitration provisions. The motion is denied in all other respects.

3. Defendant shall submit all required but delinquent fringe benefit contribution reports to Plaintiffs by March 31, 2008.

Dated: March 4, 2008

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge